UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL INSURANCE CO., GREAT
NORTHERN INSURANCE COMPANY, and
PACIFIC INDEMNITY COMPANY,

                  Plaintiffs,

-against-

PAUL H. MERTZ, JR., THE MERTZ COMPANY,
and DENNIS SORGE,

                  Defendants.

12-cv-1597-NSR-JCM

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiffs bring this action against Defendants for fraud, breach of fiduciary duty, aiding and abetting, faithless servant, and violation of Connecticut General Statutes § 42-110g (the "Connecticut Unfair Trade Practices Act"). Defendants Paul H. Mertz, Jr. and the Mertz Company (collectively, "Mertz Defendants") move for partial summary judgment. Mertz Defendants have also submitted objections to Judge McCarthy's order dated April 30, 2015 (the "April Order"). For the following reasons, the motion for partial summary judgment is GRANTED in part and DENIED in part, and Mertz Defendants' objections are OVERRULED.

## BACKGROUND

*A.   Factual background*

The relevant facts are not in dispute except where noted. The Mertz Company is an active stock corporation in the business of general contracting, of which Mertz is the president and sole shareholder. (Defs.' R. 56.1 Stmt. ¶¶ 1–3, ECF No. 124.) Since 1976, the Mertz Defendants have been retained by Plaintiffs Federal Insurance Company, Great Northern

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/2015

Insurance Company, and Pacific Indemnity Company (collectively, "Chubb") to provide repair estimates on hundreds of insured losses. (Defs.' R. 56.1 Stmt. ¶ 3, ECF No. 124.)  Chubb retains building consultants to provide it with independent and accurate estimates of the scope and cost to repair building damage that is covered by a Chubb insurance policy. (Jaeger Decl. ¶ 2, ECF No. 126.)  Chubb then uses the estimates to negotiate and, ultimately, settle claims made by its insureds. (*Id.*)  As building consultants to Chubb insurance companies, the Mertz Defendants were responsible for providing such cost estimates. (Pl.'s R. 56.1 Stmt. ¶ 3, ECF No. 118; Defs.' R. 56.1 Stmt. ¶ 3, ECF No. 124.)

Chubb claims that the Mertz Defendants, from 2004 through 2010, submitted fraudulently inflated estimates on which Chubb relied to settle and pay claims to repair insured homes. (Pl.'s R. 56.1 Stmt. ¶ 5, ECF No. 118.)  According to Plaintiffs, Mertz would then solicit the insured to hire his company to make the repairs to their homes, perform the repairs at a substantially lower cost than the initial estimate provided, and pocket the difference. (Compl. ¶¶ 2–3, ECF No. 1.)  More specifically, Plaintiffs detail Eight Insurance Claims that are illustrative of this alleged scheme. (Compl. ¶¶ 48–156, ECF No. 1.)  From 2004 through 2010, Chubb paid the Mertz Company a total of $1,079,740.61 in consulting fees relating to these estimation services. (Defs.' R. 56.1 Stmt. ¶ 26, ECF No. 124.)

Among other claims, Chubb alleges that under New York law, the Mertz Defendants were faithless servants to Chubb, and by breaching their fiduciary duty owed to Chubb, the faithless servant doctrine requires forfeiture of all compensation received for the entire period of their disloyalty. (Compl. ¶ 180, ECF No. 1.)  The parties agree that Mertz was hired as a consultant and was never Chubb's employee or agent. (Defs.' R. 56.1 Stmt. ¶ 19, ECF No. 124; Brown Decl. Ex. 1 ¶ 1, ECF No. 120-1.)  Furthermore, Chubb never retained or authorized the

Mertz Defendants to make coverage decisions or to bind Chubb regarding any loss, claim or settlement. (Defs.' R. 56.1 Stmt. ¶¶ 21, 24, ECF No. 124.)

      B.      *Background as to the discovery motion*

After Plaintiffs commenced the present action on March 5, 2012, a Civil Case Discovery Plan and Scheduling order was entered by Magistrate Judge McCarthy on July 24, 2012. Per the original order, expert depositions were due to be completed by May 31, 2012. From July 2012 to March 2015, the discovery schedule was amended approximately 20 times. On May 14, 2014, the parties disclosed to the Court a conflict with the Mertz Defendants' construction cost expert, Carl Cerbone, in that Chubb had previously sued Mr. Cerbone. Both parties consented to continue despite the conflict, and Judge McCarthy ordered that only an unforeseen emergency, not related to the Chubb lawsuit, would permit the Mertz Defendants from replacing Mr. Cerbone. On April 21, 2015, the Mertz Defendants sought an extension of time to complete discovery and to substitute William Manfredonia or Robert Sibilia in lieu of Mr. Cerbone, due to Mr. Cerbone's health issues. Chubb vehemently opposed this motion.

Judge McCarthy held a hearing on the issue and denied the Mertz Defendants' application, finding that they had not shown good cause to re-open discovery on April 30, 2015. Defendants appealed that order to this Court. After this Court determined that more information was needed to assess the Mertz Defendants' objections to the April Order, Judge McCarthy further clarified her holding in a clarification order, dated July 21, 2015 (the "July Clarification Order"). In a letter dated September 8, 2015, Defendants sustain their contention that, despite her clarification, Judge McCarthy's April Order should be overturned, and their construction cost expert replaced, due to Mr. Cerbone's new health issues.

**STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

3

Procedure. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *id.* 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. *Id.* 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."), nor

is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## STANDARD ON REVIEW OF JUDGE McCARTHY'S PRETRIAL ORDER

Under 28 U.S.C. §636(b)(1)(A), a district court may refer certain non-dispositive pretrial matters pending before the court to a magistrate judge for determination.  An order on a discovery issue is a non-dispositive order.  When a party submits objections to a magistrate judge's non-dispositive order, the district court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. §636(b)(1)(A).  A decision is clearly erroneous where "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC,* No. 14-1848-CV, 2015 WL 4999524, at *3 (2d Cir. Aug. 24, 2015) (citing *New York Progress & Protection PAC v. Walsh,* 733 F.3d 483, 486 (2d Cir.2013) (internal quotation marks omitted).  A magistrate judge's ruling is contrary to law if it "fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure." *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511–12 (S.D.N.Y. 2013) (internal citation omitted). "A showing that 'reasonable minds may differ on the wisdom of granting the [moving party's] motion' is not sufficient to overturn a magistrate judge's decision." *Edmonds v. Seavey*, No. 08 Civ. 5646(HB), 2009 WL 2150971, at *2 (S.D.N.Y. 2009) (citing *Cagle v. Cooper Cos., Inc.*, 91 Civ. 7828(HB), 1996 WL 514864, at *1 (S.D.N.Y. Sept. 10, 1996)).

This standard affords magistrate judges "broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Ritchie Risk–Linked*

*Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 78 (S.D.N.Y. 2012) (internal quotation omitted). Accordingly, "[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *Samad Bros., Inc. v. Bokara Rug Co., Inc.*, No. 09 Civ. 5843, 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010) (internal citation omitted).

## DISCUSSION

**I.     Faithless Servant Claim**

The Mertz Defendants contend that because they were neither employees nor agents of Chubb, the faithless servant doctrine is inapplicable. (Defs.' Mem. at 7.) Chubb does not dispute that the Mertz Defendants were independent consultants, but asserts that faithless servant nonetheless applies by virtue of the parties' fiduciary relationship. (Pls.' Mem. at 7.) Plaintiffs' assertion is incorrect.

The faithless servant doctrine is a creature of New York state law. The Second Circuit has recognized that the New York faithless servant doctrine "arises out of an agency or employment relationship," *CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 84 (2d Cir. 2013), and has always been "grounded in the law of agency." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003). Plaintiffs cite numerous cases purportedly for the proposition that the fiduciary relationship, and not the agency relationship, is the defining feature of the faithless servant doctrine. These cases are inapplicable.

Chubb first cites to *Robert Reis & Co. v. Volck* for the proposition that the faithless servant doctrine extends to "agents *and others* engaged in a fiduciary capacity." 151 A.D. 613, 616–17 (App. Div. 1912) (emphasis added). In *Robert Reis*, defendant was an underwear salesman employed by the plaintiff company who allegedly sold his own competing line of underwear. *Id.* at 614. The agency relationship between the plaintiff and defendant was clear, and the disposition of the case was openly predicated upon "the duty of an agent to his

6

principal." *Id.* at 615. The court did not squarely address whether faithless servant damages would apply absent a principal/agent relationship.

In *May v. Hettrick Bros. Co.*, Chubb is correct that the court found "no agency" between the parties. 181 A.D. 3, 12, (App. Div. 1917) *aff'd,* 226 N.Y. 580 (1919). However, this case does not implicate the faithless servant doctrine. The *May* defendant was required to forfeit profits it received as a result of its breach of duty. This damages formulation is consistent with an action for breach of duty, not faithless servant damages.

Chubb asserts *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95(2007) *aff'd,* 10 N.Y.3d 941 (2008), applied the faithless servant doctrine in the absence of an agency relationship. (Pls.' Opp'n at 10.) But the case expressly states that an agency relationship existed between the plaintiff and defendant. *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 101 (2007) ("[T]here are few, if any, cases that address the situation presented here, in which the agent has two related principals.").

Chubb cites *212 Inv. Corp.* for the proposition that "[t]he law is clear that disloyal fiduciaries must disgorge all wrongful benefits obtained by their disloyalty, including compensation and interest." *212 Inv. Corp. v. Kaplan*, 16 Misc. 3d 1125(A), 847 N.Y.S.2d 905 (Sup. Ct. 2007). To the extent that this language implies that any fiduciary is subject to faithless servant damages notwithstanding the absence or presence of an agency or employment relationship, the statement is dicta. In *212 Inv. Corp.*, the disloyal party was a general partner who allegedly defrauded his own partnership. This case is thus distinguishable from the instant case, because this type of relationship is analogous to an agency or employment relationship, not a third-party independent contractor.[1]

---

[1] Chubb also cites *Frame v. Maynard* for the proposition that faithless servant extends to partnerships. 922 N.Y.S.2d 48, 53 (2011) ("While a faithless servant forfeits his right to compensation, Maynard did not acquire his

7

Chubb finally argues that *Sequa Corp. v. Gelmin*, No. 91 CIV. 8675 (DAB), 1996 WL 745448, at *1 (S.D.N.Y. Dec. 31, 1996), *aff'd in relevant part, vac'd in part*, 156 F.3d 136 (2d Cir. 1998), stands for the proposition that the faithless servant doctrine should apply here. In *Sequa,* the court applied the faithless servant doctrine to a consultancy arrangement. The court did not, however, directly decide the issue of whether an agency relationship is required. The Court declines to speculate whether an agency relationship was present in *Sequa*. However, *Sequa* differs from the instant case because the defendant consultant in *Sequa* had some authority to extend credit on behalf of the plaintiff. Thus, the consultant arguably had "consent to act on behalf of" Sequa, albeit in a limited fashion, which is not present in the instant case. *See Sequa Corp.*, No. 91 CIV. 8675 (DAB), 1996 WL 745448, at *62–63; *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 101 (2007) ("Agency is a personal relationship, in the sense that an agent is an agent only by virtue of the agent's consent to act on behalf of a particular party, the principal, who has also consented that the agent shall act on his or her behalf (*see* Restatement [Second] of Agency § 1)").

For these reasons, absent clear guidance from New York courts on this issue,[2] the Court declines to extend the faithless servant doctrine to independent contractors who owe a duty of

---

interest as a result of fraud or breach of duty, and is not receiving any compensation on account of his share."). The *Frame* court did not reach the issue of the necessity of an agency relationship.

[2] In deciding a matter of New York state law, this Court looks to the law as pronounced by the New York Court of Appeals. In the absence of a determination from the Court of Appeals regarding the issue, this Court's task is to predict how the Court of Appeals would decide the issue if presented with it. (*See 1256 Hertel Ave. Associates, LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014) (*citing* 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4507 (2d ed.1996)); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Both intermediate state courts' decisions and federal decisions may help ascertain what the New York Court of Appeals would determine to be the law. (*West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 237 (1940) ("State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule")). However, "[a]s a federal court applying state law, we are generally obliged to follow the state law decisions of state intermediate appellate courts. (*Pentech Int'l, Inc. v. Wall St. Clearing Co*., 983 F.2d 441, 445 (2d Cir. 1993)). Chubb fails to cite any New York state case, let alone New York Court of Appeals case, that expressly extends the faithless servant doctrine beyond employees and agents to independent contractors with duties of loyalty.

loyalty to, but have no agency or employment relationship with, a defendant." To decide otherwise would risk expanding the damages recoverable in an ordinary duty of loyalty case to include all compensation received by the breaching party. It would also represent a significant departure from the original purpose and context of the faithless servant doctrine.

In the instant case, Chubb has not argued or adduced evidence that the Mertz Defendants were ever employees or agents of Chubb. The relationship appears to have been a traditional consultancy arrangement, in which the Mertz Defendants acted solely as independent contractors. Absent an agency or employment relationship, the Court finds that Chubb's faithless servant claim fails as a matter of law, regardless of the presence or absence of a duty of loyalty running from Defendants to Chubb. The Mertz Defendants' motion for summary judgment with regards to the faithless servant claim is GRANTED.

## II. Statute of Limitations Argument

The Mertz Defendants move for summary judgment dismissing seven of the Eight Insurance Claims as untimely under the three-year statute of limitations under the Connecticut Unfair Trade Practices Act. The Mertz Defendants argue that the Eight Insurance Claims should be evaluated separately for timeliness and have the following accrual dates:

| The Eight Insurance Claims | Last Payment Date from Plaintiffs to Insured |
| --- | --- |
| McAlley Claim | November 3, 2006 |
| Hostetter Claim | May 25, 2007 |
| Berlin Claim | November 28, 2007 |
| Fuller Claim | December 14, 2007 |
| Iddison Claim | January 25, 2008 |
| Talbot Claim | August 22, 2008 |
| Snow Claim | February 26, 2009 |
| Palaia Claim | January 26, 2010 |

Of these Eight Insurance Claims, only the Palaia Claim's accrual date falls within three years of the filing of the Complaint. The parties appear to agree that the remaining seven claims are

timely only if the "continuing course of conduct" doctrine tolls the statute of limitations. According to the Connecticut Supreme Court:

> Under the "modern formulation" of the continuing course of conduct doctrine, [to] support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the "act or omission" relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

*Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 203-04 (D. Conn. 2007) (alterations in original) (quoting *Zielinski v. Kotsoris*, 901 A.2d 1207 (Conn. 2006)).

Where a scheme of wrongdoing continues to occur after the initial act, courts have held that the statute of limitations may be tolled until cessation of the scheme. For example, in *Izzarelli v. R.J. Reynolds Tobacco Co.*, plaintiff asserted that defendant had deliberately marketed cigarettes to minors in violation of Connecticut Unfair Trade Practices Act. 117 F. Supp. 2d 167, 170 (D. Conn. 2000). The defendant maintained that, based on plaintiff's age, the statute ran three years after she reached the age of majority. *Id.* at 176. The Court held that because the marketing "scheme" continued after plaintiff was no longer a minor, the "recent wrongful conduct is related to the prior wrongful conduct and is thus sufficient to bring the case within the continuing course of conduct doctrine." *Id.* at 177.

The continuing course of conduct doctrine is "conspicuously fact-bound," *Jimmo v. Berman*, No. CV030830848, 2007 WL 2080586, at *3 n.3 (Conn. Super. Ct. Apr. 10, 2007), and the evidence adduced here is sufficient to warrant a jury's consideration. The Mertz Defendants had a fiduciary relationship with Plaintiffs. The relationship continued from at least as early as November 3, 2006 (and probably 2004) through January 26, 2010, and beyond. Indeed, Plaintiffs continued to use the Mertz Defendants' consulting services until September 2010.

Similarly, with respect to the Iddison Claim, Mertz testified as Plaintiffs' building consultant in subsequent litigation in August and October 2009, and was paid for this work in November 2009. Plaintiffs allege that the Mertz Defendants continued to carry out a scheme of fraudulent conduct during this time.

For these reasons, there is enough evidence from which a reasonable jury could conclude that the Mertz Defendants engaged in a continuing scheme to defraud Plaintiffs from November 2006 through well into the limitations period. The evidence that Mr. Mertz sought to conceal his wrongdoing (i.e., by refusing to disclose in his October 2009 deposition the full extent of his dual role as consultant and contractor) only serves to further justify applying the continuing course of conduct doctrine, as the doctrine "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." *Hass v. Hass*, 48 A.3d 713, 721 (Conn. App. Ct. 2012).

The Mertz Defendants' attempt to distinguish *Haas*, *Izzarelli*, and *Dixon* falls flat. The Mertz Defendants argue that the Court should view the Eight Insurance Claims individually, because they each involved different insureds and homes. The Court finds this distinction unpersuasive. All Eight Insurance Claims involved the same alleged perpetrator (Defendants), the same victim (Plaintiffs), and the same type of alleged wrong and modus operandi, all occasioned by a continuing fiduciary relationship. The Mertz Defendants' analogy to a doctor treating multiple patients is inapt. The Mertz Defendants' motion for summary judgment on the basis of timeliness is DENIED.

### III. Objections to Magistrate Judge McCarthy's Order and Clarification

The Mertz Defendants object to Judge McCarthy's order on the basis that it is clearly erroneous, arguing that they did in fact meet the good cause standard necessary to re-open discovery. *See* Fed. R. Civ. P. 16(b)(4); *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y.

2011) (internal citation omitted).  In determining whether good cause exists, Judge McCarthy correctly considered numerous factors outlined in *Bakalar*, including (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *Id.* at 493.  Importantly, Judge McCarthy also gave significant weight to the fact that there has already been adequate opportunity for discovery. (*See* July Order Clarification, at 8.)  In fact, the parties have had almost two years beyond the originally scheduled deadline to complete discovery. *Id.*

In assessing these factors, Judge McCarthy determined that good cause has not been shown.  Her order details the *Bakalar* factors as they apply to this case, including that trial is in fact imminent; the parties are ready to proceed but for this discovery issue; plaintiffs heavily oppose the request to re-open; the substitution of defendants' expert would not only delay the action but also cause plaintiffs to incur additional expenses; and the Mertz Defendants were not diligent in that they waited two weeks to raise Mr. Cerbone's health issue with the court and asked for an extension only three days prior to the deadline to depose him, in addition to other relevant delays. (*See* July Order Clarification, at 10–11.)  Though the Mertz Defendants validly point out that Mr. Manfredonia participated in drafting the Rule 26 expert report and is willing to abide by it, it cannot be said that Judge McCarthy was incorrect in her evaluation of prejudice. While the Mertz Defendants claim Mr. Cerbone cannot and will not testify, Judge McCarthy, in her review of the evidence, has determined that he is fully capable to testify and made a unilateral decision not to testify after being pressed with unpleasant questions in deposition. (*See*

12

July Order Clarification, at 8–9). Most significantly, Judge McCarthy found Defendants' proffered reasons to re-open discovery disingenuous. Because Mr. Cerbone's agitation, and thus the risk to his health, rose solely in response to questions regarding the Chubb lawsuit, Judge McCarthy determined that Mr. Cerbone is capable of testifying as to all other matters and that Defendants seek to replace Mr. Cerbone due to his conflict with Chubb, an issue that was foreseeable, previously raised, and barred by the Court. (*See* July Order Clarification, at 10.)

Given Judge McCarthy's extensive review of the *Bakalar* factors and her insight as to the totality of discovery in this case, this Court finds that Judge McCarthy acted well within her discretion in resolving the dispute. *See Ritchie Risk-Linked Strategies*, 282 F.R.D. at 78. Though the Court recognizes the Mertz Defendants' difficulties with Mr. Cerbone, this is not enough to overturn Judge McCarthy's decision. Accordingly, Judge McCarthy's order denying the Mertz Defendants' motion to re-open discovery is upheld.

## CONCLUSION

For the foregoing reasons, Mertz Defendants' motion for partial summary judgment is GRANTED with respect to the faithless servant doctrine claim and DENIED with respect to the statute of limitations claim. The Court additionally finds that Judge McCarthy's opinion was not clearly erroneous or an abuse of her discretion and therefore DENIES Defendants' motion seeking to overrule the April Order.

The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 117 and 130. The parties are directed to appear for a pretrial conference on October 21, 2015, at 11:00 AM.

Dated: September 29, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge