UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL INSURANCE CO., GREAT
NORTHERN INSURANCE COMPANY, and
PACIFIC INDEMNITY COMPANY,

                              Plaintiffs,

    -against-

PAUL H. MERTZ, JR., THE MERTZ
COMPANY, and DENNIS SORGE,

                              Defendants.

12-cv-1597-NSR-JCM

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiffs bring this action against Defendants for fraud, breach of fiduciary duty, and violation of Connecticut General Statutes § 42-110g (the "Connecticut Unfair Trade Practices Act" or "CUTPA"). Trial in this action is scheduled to begin on April 25, 2016. In anticipation of trial, Plaintiffs Federal Insurance Company, Great Northern Insurance Company, and Pacific Indemnity Company (collectively, "Plaintiffs" or "Chubb"), as well as Defendants Paul H. Mertz, Jr. and the Mertz Company (collectively, "Mertz Defendants") now move *in limine*. Plaintiffs' motion requests an order:

(1) requiring the defendants to bear the burden of proof that fiduciary damages are anything less than the full claim payments, and

(2) placing the burden on the defendants with respect to out-of-pocket fraud damages to offset Chubb's entitlement to recover its entire claim payment wherever there is any uncertainty regarding damages related to the homeowner insurance claims.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/12/2016

Mertz Defendants' motion seeks an order:

    (1) dismissing Chubb's two damage theories that rely on an agency relationship,

    (2) holding that Chubb's damages on all claims are limited to out-of-pocket loss, which is defined as the difference between what it paid the insureds on their insurance claims and what it should have paid them if the cost-to-repair estimates had not been fraudulently inflated, and

    (3) ruling that Chubb has the burden to prove such damages.

For the following reasons, the Plaintiffs' motion is DENIED, Mertz Defendants' motion is GRANTED in part, and the Court withholds judgment as to the remaining issues.

## BACKGROUND

The Mertz Company is in the business of general contracting. Since 1976, the Mertz Defendants have been retained by Plaintiffs to provide repair estimates on insured losses (i.e., homes in need of repair). Mertz Defendants were hired by Chubb to provide independent and accurate estimates of the scope and cost to repair building damage that is covered by a Chubb insurance policy. Chubb uses these estimates to negotiate and, ultimately, settle claims made by its insureds.

Chubb claims that the Mertz Defendants, from 2004 through 2010, submitted fraudulently inflated estimates on which Chubb relied to settle and pay claims to repair insured homes. According to Plaintiffs, Mertz would then solicit the insured to hire his company to make the repairs to their homes, perform the repairs at a substantially lower cost than the initial estimate provided, and pocket the difference.

2

In their Rule 26 damage disclosure, Plaintiffs assert several categories of damages. Category 1 of damages—relating to "Construction Claim Payment Damages"—provides three alternative methods of computation:

(1) Alternate 1 seeks to recover the "entirety of the property damage claim payments" on six of the eight insurance claims "because the Mertz Defendants acted as the insureds' agent in making false statements to Plaintiff concerning the claims."

(2) Alternate 2 seeks to recover the "difference between the claims payments that Plaintiffs made to its insureds in reliance on the false and fraudulent estimates prepared by the Mertz Defendants and the actual and necessary cost that was incurred by [them] and the insureds to repair covered fire damage."

(3) Alternate 3 seeks to recover the "claim money obtained by the Mertz Defendants."

The current motion disputes issues related to these alternative calculations of damages.

## LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation and quotation marks omitted); *see generally Luce v. United States*, 469 U.S. 38 (1984). "Courts may [additionally] entertain *in limine* motions to make pre-trial rulings allocating burdens of proof in order to avoid uncertainty at trial." *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,* 860 F. Supp. 2d

3

251, 259 (S.D.N.Y. 2012) (citing *Reale Int'l, Inc. v. Federal Republic of Nigeria*, No. 78 Civ. 23, 1984 WL 837, at *2–4 (S.D.N.Y. Sept. 11, 1984) (considering and denying "Plaintiff's motion for a ruling *in limine* reducing or modifying its burden of proof"). Where a motion seeks to limit damages, however, it must be treated as a motion for partial summary judgment. *See Point Prods. A.G. v. Sony Music Entm't, Inc.,* 215 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) *opinion amended on reconsideration*, No. 93 CIV. 4001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) (citing *Barnes Group v. United States,* 872 F.2d 528, 532 (2d Cir.1989)).

## DISCUSSION[1]

The questions presented for the Court are twofold: (1) who bears the burden of proof on damages, and (2) what is the proper theory and measure of damages? The Court will address each question in turn.

### A. Burden of Proof

#### I. Fiduciary Duty

Plaintiffs contend that "[o]nce [Chubb] proves a fiduciary breach, the burden shifts to the Defendants to prove what portion of the claim payment was [Mertz's] actual cost to make covered repairs." (Memorandum of Law in Opposition to Mertz Defendants' Motion *In Limine* Regarding Plaintiffs' Fraud, Breach Of Fiduciary Duty and CUPTA Damage Claims (the "Chubb Opposition"), ECF No. 169, 19.) In other words, Plaintiffs argue that—once they prove breach of fiduciary duty—Mertz Defendants have the burden to justify all of their expenditures

---

[1] The following discussion presumes a finding of liability by the jury, but the Court does not make any ruling with regards to such liability.

for repairing the homes, for which Chubb made claim payments. In support of this argument, Chubb relies primarily on three cases: *New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179 (2d Cir. 1994) (hereinafter, "*DePerno*"); *Stella v. Graham-Paige Motors Corp.*, 232 F.2d 299 (2d Cir. 1956); and *Gomez v. Bicknell*, 302 A.D.2d 107, 756 N.Y.S.2d 209 (2002). Chubb, however, misreads these cases.

It is well-settled that in order to sustain a claim of breach of fiduciary duty under New York law, "[Plaintiff] must prove 'the existence of a fiduciary relationship, misconduct by the [Defendants], and damages directly caused by the [Defendants'] misconduct." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009) (citing *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 204 (S.D.N.Y. 2008) (citing *Kurtzman v. Bergstol*, 40 A.D.3d 588, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007))). Chubb cites *DePerno* for the assertion that "[o]nce the beneficiaries have established their *prima facie* case by demonstrating the trustees' breach of fiduciary duty, the burden of explanation or justification . . . shift[s] to the fiduciaries," and this specifically includes "the burden of proving any set off" to their liability. *DePerno*, 18 F.3d at 182 (internal quotation marks and citations omitted). Chubb reads this to mean that once a breach of fiduciary duty is proven, the burden shifts to Mertz Defendants to disprove damages. Not so. *See Salovaara v. Eckert*, No. 94 CIV. 3430 (KMW), 1998 WL 276186, at *4 (S.D.N.Y. May 28, 1998) *aff'd*, 182 F.3d 901 (2d Cir. 1999) ("*DePerno* does not support the proposition that proof of a breach of a fiduciary duty is sufficient to shift to defendants the burden of disproving causation and loss from the breach."). As the *Salovaara* court explains, the Plaintiffs in *DePerno* had established both a breach *and a loss sustained*. *Id.* at *4. The Court agrees with *Salovaara*

5

that a plaintiff "must demonstrate both breach of fiduciary duty and a *prima facie* case of loss … and further that plaintiff's demonstration of a breach of fiduciary duty alone is not sufficient to shift the burden to defendant to disprove loss." *Id.*

*Stella* additionally supports this method of burden shifting. In *Stella,* the court held that "once a cestui shows a breach of such a duty and prima facie proof of a maximum amount of profits made by the fiduciary, then the fiduciary has the burden of proving to what extent the profits were less than this maximum." *Stella*, 232 F.2d at 302. Chubb interprets this to mean that Chubb need only prove a breach by and payments made to Mertz Defendants. The Court does not read *Stella* to support that view. Instead, *Stella* clearly states that a plaintiff must prove the "maximum amount of *profits* made by the fiduciary." *Id.* (emphasis added). In the context of the current case, where Chubb admits at least some of the insurance payments were spent on repairs, *Stella* would require Chubb to prove the amount of *profits* derived by Mertz Defendants (i.e., the amount of money received that was not spent on repairs) and therefore requires more than just proof of gross payments made.

The Court finds support for this interpretation in *Kite v. Pascale*, No. 3:07-CV-0513 AWT, 2015 WL 1485022 (D. Conn. Mar. 31, 2015). The *Kite* court analyzed burden shifting in a breach of fiduciary duty case: "[w]ith respect to breach of fiduciary duty, it is well established that [o]nce a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary." *Id.* at *8 (internal citations and quotation marks omitted). The court went on to explain, however, that "with respect to damages, there is no burden shifting. Therefore, the plaintiff maintains the burden of demonstrating the amount of damages suffered and that such

damages were proximately caused by [defendant's] actions." *Id.* (citing *Thomas v. Biller Assocs. Tri–State, LLC*, No. CV054010695S, 2011 WL 4507207, at *7 (Conn. Super. Ct. Aug.31, 2011)).

Finally, Plaintiffs' reliance on *Gomez* is misplaced, as *Gomez* dealt specifically with remedies available in the context of an employee breaching a duty of loyalty to an employer, and the parties agree that Mertz was hired as a consultant and was never Chubb's employee or agent.[2] In New York cases that have held that damages are not an essential element of a *prima facie* case of breach of fiduciary duty and therefore plaintiff does not have the burden to show damages (like *Gomez*), the fiduciary relationship is one created as a matter of law and therefore involves a higher degree of accountability, such as lawyer-client, trustee-trust/beneficiary, shareholder-officer/director, employer-employee, etc. *See, e.g.*, *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 16 Misc. 3d 1051, 843 N.Y.S.2d 749 (Sup. Ct. 2007) (ruling that no proof of damages was required on a client's successful breach of fiduciary claim against law firm based on conflict of interest where remedy that was sought was forfeiture of compensation);

---

[2] Under New York law, "an employer alleging a breach of the common law duty of loyalty against an employee may choose whether they seek damages (1) through an accounting of the disloyal employee's gain (profit disgorgement) or (2) as a calculation of what the employer would have made had the employee not breached his or her duty of loyalty to the employer." *Epstein Eng'g, P.C. v. Cataldo*, 41 Misc. 3d 1218(A), 981 N.Y.S.2d 634 (Sup. Ct. 2013) *aff'd*, 124 A.D.3d 420, 1 N.Y.S.3d 38 (N.Y. App. Div. 2015) (citing *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F Supp 2d 489, 523 (SD N.Y. 2011)). Using the first method—an accounting of the disloyal employee's gain—the *Gomez* court explained that the moving party had met its "prima facie burden of showing damages by simply proving the $353,000 gross fee that Gomez was paid. The burden then shifted to Gomez to demonstrate the amount of his direct costs in generating this gross income because he is in exclusive possession of that information." *Gomez*, 302 A.D.2d at 115. In that case, however, Gomez was an employee of the moving party, and the fee was paid to Gomez by a third-party. Thus, the question was not what Gomez was paid versus what he should have been paid, and the company itself did not suffer any certain, quantifiable loss as it did in the instant scenario. Moreover, the parties here agree that no employment relationship existed between Chubb and Mertz Defendants.

*Feiger,* 41 N.Y.2d 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977) (holding that a case for breach of fiduciary duty does not require provable damages but dismissing claims because defendant—a former employee—never misappropriated to his own use any business secrets or special knowledge); *Diamond v. Oreamuno,* 24 N.Y.2d 494, 497-98, 301 N.Y.S.2d 78, 80 (1969) (holding that, under principles similar to those behind 16(b) of the Securities Exchange Act, officers and directors, who used material inside information, are accountable in shareholder's derivative action to their corporations for their gains from transactions in company's stock, even where the actions did not injure or damage the company); *Wendt v. Fischer*, 243 N.Y. 439, 154 N.E. 303 (1926) (upholding a breach of fiduciary duty claim absent damages where the president, treasurer and manager of the purchasing corporation was a member of the firm of brokers employed by the seller to find a buyer, and he did not disclose his relations to the purchase to the seller). That type of relationship differs from the potential fiduciary relationship in the instant case, which would arise based on the facts and circumstances of the relationship, rather than as a matter of law. Moreover, that line of cases generally involves (1) the misuse of information gained as a result of the heightened relationship and (2) either no damages or unquantifiable damages, requiring as a remedy the forfeiture of compensation in the form of salaries or fees. None of those characteristics are present in the instant case. Therefore, *Gomez* is inapplicable in this case, and the Court requires the Plaintiffs to prove damages.

Thus, while Chubb is correct that the burden of proof is placed on a self-dealing fiduciary "to show that the transaction is just and fair, and that he has derived no unfair advantage from his fiduciary relation," *Bingham v. Sheldon*, 101 A.D. 48, 52, 91 N.Y.S. 917, 920 (2d Dep't 1905),

8

this does not relieve the plaintiff of its burden to prove damages. Only after a plaintiff has demonstrated a *prima facie* case of breach of fiduciary duty (including damages, in this case) does the burden shift to a defendant to prove the fairness of its conduct. In the instant case, Chubb has the burden of showing the claim payments were excessive or inflated, at which point Mertz Defendants will have to show the fairness and reasonableness of such payments, in light of the costs to repair and/or replace the properties.

## II.     The Wrongdoer Rule

Chubb next urges the Court to apply the wrongdoer rule to the instant case and rule that, "[w]here there is uncertainty as to any work, it is enough that [Chubb] establish that its claim payment was induced by the defendants' fraud and that it is therefore entitled to a return in full of its payment. To the extent that Defendants claim any offsets, they bear the burden of proving them and any uncertainty involving them." (Memorandum of Law in Support of Plaintiffs' Motion for a Pre-Trial Order on the Burden of Proof for Damages ("Chubb Motion"), ECF No. 168, 14.)

Chubb correctly provides the wrongdoer rule as applied in Second Circuit and New York State courts: "where one has committed a wrong which renders impossible the exact ascertainment of damages, 'the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party.'" *President & Directors of Manhattan Co. v. Kelby*, 147 F.2d 465, 476 (2d Cir. 1944) (citing *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563, 41 S.Ct. 248, 251, 75 L.Ed. 544 (1931)). However, Chubb mistakenly interprets the rule to

9

only require Chubb to show that it made claim payments, which will be the upper limit of damages, and then require Mertz Defendants to prove a lesser amount of damages.

While the wrongdoer rule would apply in this case, it does not relieve Chubb of its burden to prove damages, even if the damages "cannot be established with certitude." *Reynolds Sees., Inc. v. Underwriters Bank & Trust Co.*, 44 N.Y.2d 568, 574, 406 N.Y.S.2d 743, 747 (1978). As the Supreme Court explained, "while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Story Parchment Co..,* 282 U.S. at 563, 51 S. Ct. at 250-51. Thus, while it is true that Mertz Defendants will bear the risk of the uncertainty, Chubb is nevertheless required to show, at the very least, a reasonable inference of damages. *See Matter of Rothko's Estate*, 43 N.Y.2d 305, 323, 372 N.E.2d 291, 298 (1977) (holding that where it is impossible to appraise damages with certainty, the Surrogate "had the right to resort to reasonable conjectures and probable estimates and to make the best approximation possible through the exercise of good judgment and common sense in arriving at that amount"). This reasonable inference cannot be the entirety of the claim payments, as Chubb contends, because it is clear to the Court and the parties—and is admitted by Chubb themselves—that at least some amount was legitimately spent on repairs.

Chubb is therefore required to "make the best approximation [of damages] possible through the exercise of good judgment." *Id. See also Novelty Textile Mills, Inc. v. C.T. E., Inc.,*

743 F. Supp. 212, 220 (S.D.N.Y. 1990) ("The ascertainment of damages ... is not an exact science, and where responsibility for damages is clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision: It is *enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation*.") (emphasis added) (internal quotation marks and citations omitted). This approximation will then be used as an "upper limit," which Defendants will have an opportunity to disprove, and any uncertainty in the amount will be construed against defendants, to the extent defendants cannot prove a lower amount of damages through competent evidence. *See Gratz v. Claughton*, 187 F.2d 46, 51-52 (2d Cir. 1951) (L. Hand, J) ("when damages are at some unascertainable amount below an upper limit and when the uncertainty arises from the defendant's wrong, the upper limit will be taken as the proper amount.").

### B. *Proper Theory and Measure of Damages*

In their motions *in limine*, the parties submit to the court a number of issues dealing with the proper theory and measure of damages. While it is appropriate for a court to decide purely legal questions on a motion *in limine*, to the extent these issues involve questions of fact that are dependent on the record, they cannot be properly heard on a motion *in limine*. *Summit Properties Int'l, LLC v. Ladies Prof'l Golf Ass'n*, No. 07 CIV 10407 LBS, 2010 WL 4983179, at *2 (S.D.N.Y. Dec. 6, 2010) (citing *Hamblin v. British Airways PLC*, 717 F.Supp.2d 303, 307 (E.D.N.Y.2010)) ("Motions *in limine* are appropriate for evidentiary or 'purely legal ... non-record dependent legal issues, like those that could just as easily be raised in the Rule 12 context.'").

## I. Theories of Damages

In its Rule 26 damage disclosure, Plaintiffs provide multiple theories of damages—two theories seek to recover the entirety of claim money[3] by relying on an agency relationship between Mertz Defendants and the insured parties, and one seeks to recover for "out-of-pocket loss," which the parties define differently. With regards to the theories requiring an agency relationship, Mertz Defendants argue that they were not the insureds' agents and therefore Chubb is not entitled to all the claim money, whereas Chubb contends that Mertz Defendants were the insureds' agent, which allows Chubb to recover damages in the amount of full claim payments. (*See* Chubb Opposition, 4-5; Memorandum of Law of Defendants Paul H. Mertz, JR. and the Mertz Company, Inc. in Support of their Motion *In Limine* on Damages (the "Mertz Motion"), ECF No. 164, 2-3.) The question of whether an agency relationship exists seeks to limit damages and is not an evidentiary or trial management issue proper to be heard on a motion *in limine*. *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) *opinion amended on reconsideration,* No. 93 CIV. 4001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) (citing *Barnes Group v. United States*, 872 F.2d 528, 532 (2d Cir. 1989)) ("when a motion in limine seeks to limit damages, it is treated as a motion for partial summary judgment"). Whether Mertz Defendants were acting as an agent for the insured parties is a question of fact that requires examination of the record and therefore should either be (1) heard on a motion for

---

[3] Alternative 1 seeks to recover total Claim payments made by Chubb, and Alternative 3 seeks to recover total Claim payments received by Mertz Defendants.

summary judgment or (2) submitted to the jury.[4] Therefore, the Court directs the Mertz Defendants[5] to submit summary judgment briefing on this issue, in accordance with the schedule provided below.

## II. Measure of Damages

In contrast, the question of the proper measure of damages is solely a question of law.[6] The parties dispute (1) what is meant by "out-of-pocket loss" as it relates to the instant case, and (2) what is the correct calculation of damages for the breach of fiduciary duty claim.

### a. Out-of-Pocket Loss

The out-of-pocket rule holds that damages for fraud are measured by "the actual pecuniary loss sustained as the direct result of the wrong." *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 27, 901 N.Y.S.2d 246, 249 (2010) (internal citations omitted). Mertz Defendants contend that this loss should be defined as the difference between the actual claim payments and

---

[4] Though the request for damages is a *remedy* and not a *claim* properly heard on a motion for summary judgment, Chubb's assertion that Mertz Defendants were agents *is a claim*, from which a specific remedy (i.e., full claim payments) would flow. *Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 306 (E.D.N.Y. 2010) (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 517 F.Supp.2d 662, 666 (S.D.N.Y.2007)) ("the word 'claim' in Rule 56 refers to the legal theory upon which the request for relief is based, not the remedy that would flow from success on that theory.").
  Damage Alternatives 1 and 3 are based on the claim that Mertz Defendants were agents, and therefore, the question is improper on a motion *in limine*. *See also Patton v. Egan,* No. 12 CIV. 2500 LGS, 2014 WL 4652489, at *11 (S.D.N.Y. Sept. 18, 2014) ("*Compare In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 517 F.Supp.2d 662, 666 (S.D.N.Y. 2007) (construing defendants' motion for summary judgment as a motion *in limine*, 'the focus of defendants' motion is whether plaintiffs should be allowed to seek the remedy of punitive damages at trial, not whether plaintiffs' claims should fail for lack of evidence') *with Hamblin v. British Airways PLC*, 717 F.Supp.2d 303, 307 (E.D.N.Y.2010) (noting that, in *MTBE*, treating motion for summary judgment as *motion in limine* made sense, as motion presented pure question of law, whereas instant motion argued there was not 'sufficient evidence to raise a factual issue for the jury')").

[5] The Court directs Mertz Defendants to submit briefing rather than Chubb because the issue was presented by Mertz Defendants in their motion *in limine*.

[6] The out-of-pocket loss discussion presumes Chubb is able to prove the estimates were fraudulently inflated. The Court is not, however, making a ruling on this issue.

what Chubb should have paid if the estimates were not inflated. (*See* Mertz Motion, 1.) On the other hand, Chubb urges the Court to hold that out-of-pocket loss is defined as the difference between the actual claim payments and the actual cost of the covered repair work. (*See* Chubb Opposition, ECF No. 169, 13-17.) The Court fails to see any meaningful difference between the two interpretations.[7]

Disregarding profit and overhead, if the estimates were not inflated, the amount submitted would be the actual cost of the covered repair work. Chubb is correct that the Replacement Cost provisions of the insurance contracts apply, and replacement costs are "expenses incurred by the insured in obtaining the replacement." *Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222, 228, 645 N.Y.S.2d 221, 225 (4th Dep't 1996). Had the estimates not been inflated, the total replacement costs would be equal to the total claim payments, and this amount would also equal "what Chubb should have paid if the estimates were not inflated." The only question for the Court, then, is what evidence the parties are able to submit to prove "actual replacement costs."

Having already held that Chubb is not relieved of its burden of proving damages, both parties are invited to submit any admissible evidence that will properly demonstrate damages. The Mertz Defendants claim that Chubb seeks to exploit "gaps" in their accounting records by requiring records of "documented" costs. (Memorandum of Law of Defendants Paul H. Mertz,

---

[7] For the sake of simplicity, the Court will disregard profit and overhead issues in the current discussion, though the Court recognizes that profit and overhead would create a slight variance in the damage calculation proposed by Chubb versus the one proposed by Mertz Defendants. Whether Chubb is entitled to recover profits is a separate question not addressed in the current motion. *See* Section B.II.b ͵*infra*.

14

JR. and the Mertz Company, Inc. in Opposition to Plaintiffs' Motion *In Limine* on Damages ("Mertz Opposition"), ECF No. 169, 10-11.) However, Chubb readily admits that Mertz Defendants may submit all applicable, relevant, and admissible evidence to show their actual repair costs. (Reply Memorandum in Support of Plaintiffs' Motion for a Pre-Trial Order on the Burden of Proof for Damages ("Chubb Reply"), ECF No. 175, 4.) The Mertz Defendants are free to rely upon, as requested and to the extent it is admissible, the testimony of Paul Mertz, the testimony of their construction cost expert, relevant tax returns, and any other evidence that they believe proves their actual reconstruction costs. (*See* Reply Memorandum of Law of Defendants Paul H. Mertz, JR. and the Mertz Company, Inc. in Support of their Motion *In Limine* on Damages ("Mertz Reply"), ECF No. 174, 1, 5; Mertz Opposition, 10.)

        b. *Calculation of Damages for Breach of Fiduciary Duty*

As a final note, the Court holds that damages from breach of fiduciary duty depend upon the nature of the wrongs that Chubb can prove were committed by Mertz Defendants. *See Scalp & Blade, Inc. v. Advest, Inc.*, 309 A.D.2d 219, 226, 765 N.Y.S.2d 92, 97 (2003) (holding that in a breach of fiduciary duty context, "the proper measure of damages [] depends on the precise nature of the wrong or wrongs committed by defendants"). Mertz Defendants contend that out-of-pocket loss is the correct measure for breach of fiduciary duty damages, (Mertz Motion, 16), whereas Chubb argues that as breaching fiduciaries, Mertz Defendants are required to disgorge all profit gained as a result of the violation of trust. (Chubb Motion, 7.)

As the Southern District recently explained, "[t]he calculation of damages in breach of fiduciary duty cases is predicated upon the type of misconduct in which the fiduciary engaged."

*Negrin v. Kalina*, No. 09 CIV. 6234 LGS KNF, 2013 WL 6671688, at *4 (S.D.N.Y. Dec. 17, 2013) *report and recommendation adopted,* No. 09 CIV. 6234 LGS, 2014 WL 67231 (S.D.N.Y. Jan. 7, 2014) (citing *Estate of Janes,* 90 N.Y.2d 41, 55, 659 N.Y.S.2d 165, 172 (1997) (lost-profit measure of damages applies where the fiduciary's misconduct consisted of deliberate self-dealing and faithless transfers of trust property, whereas the value of lost capital is the proper measure of damages when the fiduciary's misconduct is the negligent retention of the assets that he or she should have sold)). When the parties are claiming fraud, "the measure of damage is 'the actual pecuniary loss sustained as the direct result of the wrong.'" *Negrin,* 2013 WL 6671688, at *4 (citing *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996)). In other cases where a fiduciary violates his position of trust, courts have held that he must account for all the profits derived therefrom. Such cases tend to involve the misuse of insider information, gained as the result of a heightened relationship described in Section A.I, *supra*.[8] *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 995-96 (2d Cir. 1983) (songwriter's former business manager had breached his fiduciary duty to songwriter by using confidential information for his own benefit); *Diamond v. Oreamuno,* 24 N.Y.2d 494, 497-98, 301 N.Y.S.2d 78, 80 (1969) (officers and directors, who used material inside information, are accountable in shareholder's derivative action to their corporations for their gains from transactions in company's stock); *Stella v. Graham-Paige Motors Corp.,* 232

---

[8] Rule 16(b) of the Securities Exchange Act allows recovery of *profits* realized by insiders (officers, directors, or beneficial owners of more than 10% of the issuer's equity securities at the time of both purchase and sale) from the purchase and sale of any equity security of the issuer within any period of less than six months. As noted in *Diamond v. Oreamuno,* though defendants at the state level may be able to avoid liability under 16(b), the same principles apply, and states will condemn "the same sort of 'abuse of a fiduciary relationship' as is condemned by the Federal law." 24 N.Y.2d at 501.

F.2d 299, 302 (2d Cir. 1956) (stockholder's action to cover short swing profits under Securities Exchange Act § 16(b)). The Court reserves judgment on the appropriate measure of damages, which will depend on the determinations made at trial as to the nature of the parties' relationship and the nature of the wrongs (if any) committed by Mertz Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is DENIED, Mertz Defendants' motion is GRANTED in part, and the Court withholds judgment as to the remaining issues. In so holding, the Court rules:

(1) Plaintiffs have the initial burden to prove damages, under both the breach of fiduciary duty burden shifting and the wrongdoer rule;

(2) Whether the Mertz Defendants were agents of the insured parties is a question of fact not proper for a motion *in limine*;

(3) Out-of-pocket loss is defined as the difference between the actual claim payments and the actual cost of the covered repair work, which is the same (disregarding profit and overhead) as what Chubb should have paid if the estimates were not inflated; and

(4) Both parties are allowed to submit any admissible and relevant evidence to prove such out-of-pocket loss.

The Court reserves judgment on the proper calculation of damages for the breach of fiduciary duty, which will depend upon the nature of the wrongs that Chubb can prove were committed by Mertz Defendants. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 161 and 167.

With regards to the summary judgment briefing on the issue of an agency relationship, the Mertz Defendants should submit moving papers no later than January 22, 2016. Chubb's opposition will be due February 5, 2016, and reply papers will be due February 19, 2016. The parties are directed to review the Court's individual rules regarding motion practice.

Dated:  January 12, 2016
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge